IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BAILEY, et al., )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>CLOVIS UNIFIED SCHOOL )<br>DISTRICT, et al., )<br>)<br>Defendants. )<br>_____ ) | 08-CV-0146-AWI-GSA<br><br>**MEMORANDUM OPINION<br>AND ORDER DENYING<br>PLAINTIFFS' MOTION FOR<br>PRELIMINARY INJUNCTION**<br><br>(Document # 11) |

This case comes before the Court on Plaintiffs' motion for preliminary injunction. For the reasons that follow, the motion will be denied.

**FACTUAL BACKGROUND**

In or around early 2007, Vincent Bailey, father of Kevin Bailey, learned that he was being transferred by his employer from New York to California. He and his wife subsequently began a lengthy investigation into schools in the Central San Joaquin Valley to decide which schools would be best for their children. This process involved numerous telephone calls, campus visits, and interviews with administration, teachers, students and staff of schools in Modesto, Fresno and Clovis, California. In or around February 2007, Vincent Bailey visited high schools in the Clovis Unified School District ("CUSD"), including Clovis East High School ("CEHS"), where

he met with the Principal. In or around late March, 2007, the Principal of CEHS visited New York City and, on or about March 30, 2007, had dinner with Vincent Bailey at a restaurant there.

In or around August 2007, Kevin Bailey began to attend CEHS as a freshman. Later that year, Kevin Bailey qualified for a position on the varsity basketball team at CEHS. However, in or around mid-November 2007, days before the first game of the season, Kevin Bailey received notice that CUSD had denied him eligibility to play basketball at CEHS for the season. The suspension was purportedly due to the dinner between Vincent Bailey and the CEHS Principal—conduct that officials from CUSD deemed to have violated Rule 510 of the California Interscholastic Federation ("CIF") Bylaws, which prohibits the "use of undue influence" to secure a student and "may cause the student to be ineligible for high school athletics for a period of one year . . . ." Vincent Bailey immediately contacted officials at CUSD to inquire into and appeal the decision.

Vincent Bailey argued and still maintains that the dinner was neither inappropriate nor that any "undue influence" was used then or at anytime to bring the Bailey family to the decision to enroll Kevin Bailey in CEHS. He claims that the Principal's trip to New York was made to attend a conference for educators and was planned long before the meeting between the two in February 2007. Vincent Bailey alleges that he offered the CEHS Principal an invitation to dinner as a gesture of hospitality upon learning of his trip, that both parties paid for their own meals, and that the topic of Kevin Bailey's involvement with CEHS athletics was never discussed.

After telephone conversations and e-mail correspondence between Vincent Bailey and CUSD officials, a representative from CUSD sent a letter to Vincent Bailey on December 5, 2007, informing him that Kevin Bailey was determined eligible to play all sports at CEHS at the freshman level, but remained ineligible to play varsity basketball for the remainder of the 2007-2008 season. To date, the Court understands that Kevin Bailey has been playing on the freshman basketball team. On or around January 3, 2008, Vincent Bailey, through his attorney, filed a formal appeal of the suspension from the varsity team to the Central Commissioner of the CIF.

2

The CIF ruled that it lacked jurisdiction to hear an appeal and that only CUSD could overturn the decision. Vincent Bailey subsequently met with CUSD officials but was told, in short, that they were not willing to reverse the decision.

Shortly thereafter, Kevin Bailey and Vincent Bailey ("Plaintiffs") initiated the present litigation. Plaintiffs bring two causes of action against the CUSD and CIF ("Defendants") pursuant to 42 U.S.C. § 1983. The first claim alleges numerous civil rights violations, including that Defendants violated Kevin Bailey's right to equal protection under the Constitution by imposing a harsher penalty on Kevin Bailey and treating him differently than other similarly situated students because he is an African-American, and that Defendants violated Kevin Bailey's rights to freedom of speech, association, travel, and privileges and immunities due to citizens under the Constitution. The second claim alleges that Defendants violated Kevin Bailey's right to due process under federal and California law. Plaintiffs now seek a preliminary injunction as relief.

## **PROCEDURAL HISTORY**

On January 23, 2008, Plaintiffs filed a Complaint for Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction for Violations of Constitutional Rights in the Superior Court of California, County of Fresno, against Defendants. Plaintiffs seek to enjoin Defendants from barring Kevin Bailey from participating on the Clovis East High School varsity basketball team. On January 28, 2008, Defendants removed the case to this Court. On January 30, 2008, Plaintiffs filed an ex parte application for a temporary restraining order along with a Supplemental Memorandum of Points and Authorities in Support of Application/Motion for Temporary Restraining Order, Order to Show Cause and Preliminary Injunction. This Court denied the ex parte application for a temporary restraining order later that day and set an expedited briefing schedule for resolution of the motion for preliminary injunction. Defendants filed an opposition to the motion on February 6, 2008 and Plaintiffs filed a reply on February 8,

2006.

## LEGAL STANDARD

Rule 65(a) of the Federal Rules of Civil Procedure allows for the issuance of a preliminary injunction as a provisional remedy.  The legal principles applicable to a request for preliminary injunctive relief are well established.  To prevail, the moving party must show either: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor."  Walczak v. EPL Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999); Oakland Tribune, Inc. v. Chronicle Publishing Company, Inc., 762 F.2d 1374, 1376 (9th Cir. 1985).  The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown.  Walczak, 198 F.3d at 731; Oakland Tribune, 762 F.2d at 1376.  The greater the relative hardship to [a plaintiff], the less probability of success must be shown.  Walczak, 198 F.3d at 731.  "Under either formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury."  Oakland Tribune, 762 F.2d at 1376.  In the absence of a significant showing of irreparability, the court need not reach the issue of likelihood of success on the merits.  Id.

"An alleged constitutional infringement will often alone constitute irreparable harm."  Goldies' Bookstore, Inc. v. Superior Court of State of Cal., 739 F.2d 466, 472 (9th Cir. 1984).  But where a federal injunction is sought against a governmental entity, the party requesting relief must show a threat of "real and immediate," not conjectural or hypothetical, irreparable harm.  Orantes-Hernandez v. Thornburgh, 919 F.2d 549, 557 (9th Cir. 1990).

# DISCUSSION

A. **Mandatory Injunction**

Injunctions are classified as "prohibitory" or "mandatory," depending on their effect on the party enjoined.  A prohibitory injunction preserves the status quo, while a mandatory injunction goes beyond simply maintaining status quo and compels the performance of an affirmative act.  Stanley v. University of Southern California, 13 F.3d 1313, 1320 (9th Cir. 1994).  A party enjoined by a mandatory injunction must undo the wrong or injury with which he or she is charged.  Mandatory preliminary injunctions alter the status quo by commanding some positive act and are "subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party."  Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993).  When a mandatory injunction is requested, the district court should deny such relief "unless the facts and law clearly favor the moving party."  Stanley, 13 F.3d at 1320. This Court's first task is to determine whether Plaintiffs requests a prohibitory injunction or a mandatory injunction.  See Pinnacle Armor, Inc. v. U.S., No. CV-F-07-1655, 2008 WL 108969 (E.D. Cal. 2008).

Here, Plaintiffs received notice that officials from the CUSD, CEHS, and/or CIF met and ruled that Kevin Bailey was banned from participating on the CEHS varsity basketball team in or around mid-November 2007 due to a violation of Rule 510 of the CIF Bylaws.  Since that time, Kevin has not played in any CEHS varsity basketball game.  Thus, by January 30, 2008, the date this action was filed in this Court, Kevin Bailey had already been banned from the team for over two months.  Plaintiffs now seek to compel Defendants to perform affirmative acts: to remove the ban imposed against Kevin Bailey and to reinstate him in the CEHS varsity basketball team. The relief sought reflects the essential characteristics of a mandatory injunction.  Therefore, Plaintiffs seek a mandatory injunction that will be subject to a higher degree of scrutiny because such relief is particularly disfavored under the law of this circuit.  Stanley, 13 F.3d at 1320.

### B. Irreparable Injury

The single most important prerequisite for the issuance of a preliminary injunction in a case such as this one is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. See 11A Wright & Miller, Federal Practice and Procedure § 2948.1 (3d ed. 2004). The primary injury shown here by Plaintiffs is that Defendants have deprived Kevin Bailey of the opportunity to play varsity basketball during what would be his freshman season at CEHS and if a preliminary injunction is not granted, he will miss the opportunity to play in the remaining few weeks of the season and post-season. Plaintiffs argue that the injury is irreparable because Kevin will lose "his participation in varsity basketball for his entire freshman year which can never be repeated." In support of this, Plaintiffs cite to a Supreme Court decision and claim that they have no alternative adequate remedies because "'a pecuniary award is not an adequate substitute for the intangible values' for which athletes compete," such as "'the incomparable importance of' his freshman varsity basketball season."

Plaintiffs quote the language above from Reynolds v. International Amateur Athletic Federation, 505 U.S. 1301, 1302 (1992), in which Justice Stevens affirmed a circuit court decision to stay a preliminary injunction in order to allow an athlete to compete in the 1992 United States Olympic Trials. Justice Stevens' complete sentence, from which Plaintiffs quote, reads as follows: "With respect to the second [dispositive question], a decent respect for the incomparable importance of winning a gold medal in the Olympic Games convinces me that a pecuniary award is not an adequate substitute for the intangible values for which the world's greatest athletes compete." Id. In Reynolds, if the preliminary injunction was not granted, the plaintiff's opportunity to compete in the 1992 Barcelona Olympics, let alone to win a medal, would have been permanently foreclosed; considering that the Olympic Games only take place every four years—a significant amount of time for athletes competing at the international

level—the plaintiff may never have been able to compete at the Olympics again.

Plaintiffs in this case, on the other hand, have failed to demonstrate any comparably irreparable injury. It is undisputed that Kevin Bailey will be eligible to participate on the varsity basketball team during his next three years of high school. Furthermore, he is currently eligible for and participating on the freshman basketball team. Plaintiffs have not shown sufficient evidence that Kevin Bailey would suffer such irreparable harm by not playing varsity basketball for the remaining weeks of his freshman season that this Court must take the extraordinary step of ordering a preliminary injunction before a decision on the merits can be rendered. More to the point of the quotation cited above, Plaintiffs have failed to show how the opportunity to play varsity high school basketball over freshman high school basketball is tantamount to the opportunity to compete for an Olympic gold medal, especially with regard to the adequacy of a pecuniary award.

### C.   No Clear Showing of a Probability of Success on the Merits

Plaintiffs also claim that Defendants' actions have deprived Plaintiffs of numerous constitutional rights and that if a preliminary injunction is not granted, Plaintiffs will continue to be deprived of those rights. It is true that constitutional violations are of the utmost importance and, as stated above, "will often alone constitute irreparable harm." Goldies' Bookstore, Inc., 739 F.2d at 472. However, Plaintiffs' purported constitutional violations do not, at this point, demonstrate a probability of success on the merits.

#### 1.   Equal Protection Claim

Plaintiffs argue that Defendants' actions violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by treating Kevin Bailey differently from "Caucasian, Asian and female students" because he is an "out of state African-American transfer student." The Clause is "essentially a direction that all persons similarly situated should

7

be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). In order to succeed on an equal protection claim brought under 42 U.S.C. § 1983, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 1998). As an African-American, Kevin Bailey may be considered a part of such a "protected class." However, the element of intentional or purposeful discrimination is necessary to establish a denial of equal protection of the laws, and the discriminatory purpose will not be presumed, but must be clearly shown. Snowden v. Hughes, 321 U.S. 1 (1944).

The only evidence proffered by Plaintiffs is an account of two white students who transferred into CUSD high school that were also charged with a violation of Rule 510 of the CIF Bylaws, but were only prohibited from participating on the school wrestling team for pre-league meets. In response, Defendant CUSD submitted evidence from six cases: three involving white male students, two involving white male coaches, and one involving a Hispanic male administrator. All six cases took place between 2005 and 2008 and all demonstrate that some form of punishment, in some cases more severe than the punishment in this case, was meted out.

A plaintiff may also assert a claim as a "class of one" against defendants who "intentionally" treated him or her in a manner that was "irrational and wholly arbitrary," in violation of the Equal Protection Clause. Village of Willowbrook v. Olech, 528 U.S. 562, 564-65 (2000) (per curiam). But for a successful "class of one" equal protection action under § 1983, a plaintiff must still show that he or she was (1) intentionally treated differently from others similarly situated and (2) that there is no rational basis for the different treatment. Id.; see also Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004) (§ 1983 action brought by "class of one" plaintiff for equal protection violation). In this case, as discussed above, Defendants have submitted evidence showing a lack of intentional disparate treatment. Plaintiffs' affidavits do not controvert that evidence.

At this time, Plaintiffs have failed to show a probability of success on the merits in their

equal protection claim.

### 2. Additional Claims of Constitutional Violations

It is even less likely, at this point in the litigation, that Plaintiffs will succeed on their other civil rights claims, in which they cite violations of Kevin Bailey's rights to freedom of speech, association, travel, privileges and immunities, and due process under federal and California law.

To establish a claim for the denial of due process, Plaintiffs must first establish that Kevin Bailey had a liberty or property interest protected by the due process clause. See Board of Regents v. Roth, 408 U.S. 564, 569 (1972); Parks v. Watson, 716 F.2d 646, 656 (9th Cir. 1983) ("A property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law." (internal citations omitted)). Plaintiffs have pointed to no property or liberty interest protected by federal law and in a thorough constitutional analysis, the court in Ryan v. California Interscholastic Federation-San Diego Section, 94 Cal. App. 4th 1048, 1061 (Cal. Ct. App. 2001), confirms that neither "the California Constitution nor California statutory law contains any provision that entitles students to an absolute right to participate in . . . interscholastic athletics . . ." so as "to warrant due process protection."

Plaintiffs' additional claims of First and Fourteenth Amendment violations lack sufficient evidence and similarly fail to show a probability of success on the merits.

Accordingly, this Court has no choice but to deny Plaintiffs' motion for a preliminary injunction.

**ORDER**

For the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED that:

Plaintiffs' motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

**Dated:     February 11, 2008**              /s/ Anthony W. Ishii
                                              UNITED STATES DISTRICT JUDGE